Susan **CHOCKLA**, Plaintiff,

v.

**CELEBRITY CRUISE LINES, INC.**, Defendant.

No. 98–136–Civ.

United States District Court, S.D. Florida, Miami Division.

April 21, 1999.

tion of § 605 to the subsequent cable retransmission of the signal." *Sykes*, 75 F.3d at 132.

Caryn D. Vogel, Miami, FL, for plaintiff.

Rodolfo Gomez, Allen Norton & Blue, Coral Gables, FL, for defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (DE # 30).

UPON CONSIDERATION of the motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiff Chockla commenced this action in January 1998 against Defendant Celebrity Cruise Ships ("Celebrity") for violations of the Americans with Disabilities Act ("ADA") and the Florida AIDS Discrimination Act, claiming wrongful termination as a result of Plaintiff's contraction of HIV and the AIDS virus.

The following facts are undisputed for purposes of ruling on this motion. Celebrity Cruises, Inc. is a luxury cruise line which operates several cruise ships from various ports throughout the United States. In August 1993, Celebrity hired Plaintiff as a Document Agent in its Documentation Department. Cynthia Shobe was assigned to serve as Plaintiff's immediate supervisor, and Shobe reported to Frieda Laganiere, who was the Director of the Air/Sea Department.

Plaintiff's duties as a Documentation Agent were primarily to prepare, issue, and pack tickets and other travel documents, place insurance confirmations in envelopes, answer telephone calls, and post mailing information in the computer for particular cruise ships.

At the time of Plaintiff's employment, Celebrity employees were subject to a series of rules which regulated employee work and behavior. These rules permitted employees to take a total of five (5) sick days and three (3) personal days, and further provided that employees were entitled to arrive late to work on three (3) occasions per year. In addition, employees

were permitted only one incoming and one outgoing personal call each day. *See id.* at 110. Chockla has indicated that she was familiar with these rules. *See Chockla Dep.* at 51–53.

During her tenure as a Celebrity employee, Plaintiff developed a lengthy history of violations of the aforementioned rules. Plaintiff has conceded that during 1994, 1995, and 1996, she exceeded Celebrity's policy for the number of permitted absences. These absences were for a variety of personal reasons, including for car trouble, to take her son to court proceedings, and to pick up her son after he had been sent home from school. *See id.* at 130–31.

In addition, Plaintiff's employment history reflects tardiness in excess of Celebrity's policy. Specifically, between February and September 1995, Plaintiff either left early or arrived late on approximately eleven (11) occasions. *See id.* at 56.

Plaintiff had been advised that when she had to take her son to court, she was expected to report to work either before the appointments if they were in the afternoon, or after the appointments if they were in the morning; however, Plaintiff often took the entire day off. *See id.* at 98–99.

Plaintiff was confronted with policy violations on numerous occasions prior to Celebrity's discovery of her illness. During June 1995, Plaintiff was counseled by Shobe for wandering around the office and leaving her workstation unattended. *See id.* at 57. On September 21, 1995, Plaintiff received a written warning from Laganiere for poor attendance and was placed on a thirty (30) day probationary period. *See id.* at 54.

Plaintiff had also been reprimanded for taking excessive breaks. On average, Plaintiff went to the restroom at least six (6) times during the day, and took at least one smoking break before lunch and an-

other after lunch. *See id.* at 68–70. Plaintiff's smoking breaks regularly exceeded what was permitted by Celebrity policy, with which Plaintiff has conceded she was familiar.

In January 1996, Plaintiff did not come to work for approximately one week. Because this was an extended absence, Linda Raven, Shobe's replacement as Plaintiff's immediate supervisor, requested that Chockla submit a note from a physician. *See id.* at 42–43. In February 1996, during a discussion between Plaintiff and Raven about Plaintiff's week away from work, Plaintiff informed Raven that Plaintiff had tested positive for the HIV virus.[1] However, Plaintiff informed Raven that the physician whom Plaintiff had consulted concluded that Plaintiff's one-week absence was not related to her HIV condition, but instead was the result of being run-down. Raven then informed Laganiere about Plaintiff's condition. *See id.* at 44.

Between January and July 1996, Plaintiff took three (3) personal days, eleven (11) sick days, and five (5) vacation days that she had accrued. *See id.* at 77–78.

On March 6, 1996, Plaintiff received a written warning for her violation of the Company's telephone usage policy. On April 24, 1996, Raven wrote a memorandum to Laganiere indicating Plaintiff's productivity had declined, and that she exhibited a general lack of interest in her work. Specifically, Raven had observed Plaintiff not working, gazing out the window, and taking excessive breaks. In this memorandum, Raven recommended that Chockla again be placed on probation.

In June 1996, Susan Celeste replaced Raven as the Documentation supervisor. After Celeste assumed her position, Plaintiff was issued repeated warnings from supervisors for policy violations, both verbally and in writing. In 1996, Plaintiff

---

1. HIV has been recognized as the virus that causes AIDS. *See* Lyn R. Frumkin & John M. Leonard, *Questions and Answers on AIDS* 1, 5–6 (3d ed.1997); *see also Ray v. School Dist.,* 666 F.Supp. 1524, 1529 (M.D.Fla.1987) ("Current medical researchers have concluded that AIDS is caused by the infection with human immuno-deficiency virus (HIV).").

took several personal days and sick days to deal with personal matters including car trouble, a sick mother, and her son, who was required to appear in court on a number of occasions in order to deal with certain legal matters. *See id.* at 77–79.

On July 29, 1996, Plaintiff received a written warning from Laganiere for poor attendance and rudeness to employees and/or customers. Laganiere also counseled Plaintiff regarding Plaintiff's lower productivity as reflected in Plaintiff's work log sheets.

In August 1996, Plaintiff requested to take leave from work, and Laganiere granted Plaintiff's request to take leave. *See id.* at 99–100

Plaintiff agreed to return to work on September 16, 1996. During her leave, Plaintiff spoke on the telephone with Laganiere, who told Plaintiff that she could take all the time she needed, as long as she informed Laganiere when she would return from leave. *See id.* at 103.

On September 16, 1996, Plaintiff did not return to work. On September 18, 1996, Celeste sent Plaintiff a letter advising her that she needed to contact the Company by September 20, 1996.

Plaintiff received the letter from Celeste on September 19, 1996. On that day, Plaintiff contacted Celeste and informed her that she would not be returning to work until September 23, 1996, because her mother had been diagnosed with a worsened condition, her kids were sick, and "there were other things going on." *Id.* at 108–10.

After Plaintiff returned from leave, her attendance problems continued. On October 8, 1996, Laganiere gave Plaintiff a written warning for poor attendance and placed Plaintiff on a sixty (60) day probationary period. In the warning, Laganiere cautioned Plaintiff that if she was late again she would be terminated from employment. *See id.* at *Ex.* 4.

Three days later, on October 11, 1996, Laganiere again gave Plaintiff a written warning regarding arriving late or leaving early and cautioned her that the next time that she arrived late, Plaintiff would be terminated. *See id.* at *Ex.* 5.

On October 29, 1996, Laganiere received the Company's telephone report, which led her to believe that Plaintiff had made an excessive amount of personal telephone calls in violation of the Company's policy. *See Laganiere Aff.* ¶ 25). Laganiere felt that Chockla's productivity had not improved, and on October 30, 1996, Celebrity terminated Plaintiff's employment.

During the course of her employment, Plaintiff did not ask for any accommodation to perform the essential functions of her position with Celebrity. *See id.* at 137. Further, Plaintiff has not alleged that the days that she took as sick days, personal days, or other leave were related to her HIV-positive condition. *See id.* at 79.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if

the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Plaintiff's Discrimination Claim Under the ADA

Enacted in 1990, the ADA was designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101 (1994). Since that time, numerous plaintiffs with HIV and AIDS have brought claims under the Act, alleging discrimination on the basis of their disability by private employers. *See* Armen H. Merjian, "Aids, Welfare, and Title II of the Americans with Disabilities Act," 16 *Yale L. & Pol'y Rev.* 373, 373 (1998).

Under the ADA, employers are barred from discriminating against qualified disabled individuals. *See* 42 U.S.C. § 12112(a) (1996). The Act provides, in pertinent part: "No covered entity shall discriminate against a qualified individual with a disability, because of the disability of such individual, in regard to ... the ... discharge of employees." *Id.*

■ The plaintiff holds the burden of establishing a prima facie case of discrimination under the ADA, and she may do so in one of two ways: She may provide either direct evidence of discriminatory intent, or create an inference of discrimination through circumstantial evidence. *See Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990).

■ In the context of an employment discrimination case, direct evidence is evidence that "establishes discriminatory intent without inference or presumption." *Id.* at 1081. In other words, "Only the most blatant remarks whose intent could only be to discriminate ... constitute direct evidence." *Id.* (citing *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir. 1989)). By contrast, circumstantial evidence is evidence that only "*suggests* discrimination, leaving the trier of fact to

*infer* discrimination based on the evidence." *Id.* at 1081–82 (emphasis in original).

Plaintiff has not offered the Court direct evidence of discrimination. Instead, Plaintiff is forced to carry her burden of presenting a prima facie case of discrimination through the use of circumstantial evidence. Defendant argues that Plaintiff has failed to carry this burden, and the Court agrees.

■ The Eleventh Circuit has provided a standard by which claims of discrimination based on circumstantial evidence may be evaluated. *See, e.g., Gordon v. E.L. Hamm & Assocs., Inc.,* 100 F.3d 907 (11th Cir.1996); *Pritchard v. Southern Co. Svcs.,* 92 F.3d 1130 (11th Cir.1996). Under the standard, Plaintiff must demonstrate the following: 1) she has a disability; 2) she is a qualified individual; and 3) she was discriminated against because of her disability. *See Pritchard,* 92 F.3d 1130.

■ Plaintiff has not stated a prima facie case under the ADA because she has failed to meet the third requirement of the test established by the Eleventh Circuit. Specifically, Plaintiff has failed to demonstrate that her discharge was a result of her disability.

For the duration of her employment with Defendant, Plaintiff was reprimanded and counseled for her misconduct. A short review of her history at Celebrity reveals numerous occasions in which Plaintiff was disciplined for poor job performance, recurring tardiness, early departures, and absences at Celebrity.

Perhaps more importantly, much of Plaintiff's misconduct and discipline occurred prior to when Defendant learned of Plaintiff's disability. Prior to disclosing her HIV-positive status to Raven, Plaintiff had been reprimanded and counseled regarding poor attendance, inappropriate use of the telephones, and "joking around" with other employees during work hours. *See Chockla Dep.* at 47–50.

Following the point at which Defendant learned of Plaintiff's disability, Plaintiff's misconduct continued; however, Plaintiff has failed to demonstrate that any of her tardiness, early departures, absences, and improper behavior at work were in any way related to her disability. Instead, Plaintiff's deposition reveals just the opposite:

Q: I think you've already testified now during the absences, early departures, late arrivals, personal days during 1996 until the time you were terminated did not have anything to do with your condition, correct, your HIV condition?

A: Right.

Q: Just wanted to make sure.

A: Yes.

*Id.* at 100.

The Court finds that Defendant had legitimate, non-discriminatory grounds for terminating the employment of Plaintiff, and it was Plaintiff's misconduct, not her disability, which led to her eventual termination. Unsupported allegations are not sufficient to survive a motion for summary judgment. As such, Plaintiff's claim must fail.

### III. Wrongful Termination under Florida Statute § 760.50(3)

In Count II of her First Amended Complaint, Plaintiff claims that she was wrongfully terminated in violation of Florida Statute § 760.50(3)(b), which provides that "no person may fail or refuse to hire or discharge any individual ... on the basis of ... results or perceived results of [an HIV] test...." Plaintiff claims that her discharge was directly related to her disability; however, for the reasons discussed above, Plaintiff has failed to present sufficient evidence to support her accusations.

Plaintiff's deposition offers substantial evidence to justify the termination of Plaintiff's employment for reasons entirely unrelated to her disability. The record indicates that Plaintiff was repeatedly reprimanded both prior to and after Defendant's awareness of Plaintiff's disability, and Plaintiff has failed to rebut Defen-

dant's assertions regarding her unsatisfactory performance. The Court thus finds no genuine issue of material fact.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Motion be, and the same is hereby, GRANTED.

DONE AND ORDERED.