948 So.2d 921 (2007)
Cameshia BYRD, an individual, Appellant,
v.
BT FOODS, INC., d/b/a Wendy's Coral Springs, a Florida corporation, and Thomas Miko, an individual, Appellees.
No. 4D06-600.
District Court of Appeal of Florida, Fourth District.
February 14, 2007.
*923 Keith M. Stern and Stacey H. Cohen of Shavitz Law Group, P.A., Boca Raton, for appellant.
Derek A. Schwartz of Derek A. Schwartz, P.A., Boca Raton, for appellee.
GROSS, J.
Cameshia Byrd appeals an order granting final summary judgment in favor of BT Foods, Inc. d/b/a Wendy's Coral Springs on all three counts of her amended complaint alleging human immunodeficiency virus ("HIV") discrimination.[1] Byrd asserted causes of action for violation of (1) the Florida Omnibus AIDS Act, section 760.50(3)(b), Florida Statutes; and (2) the Florida Civil Rights Act, section 760.10(1)(a), Florida Statutes (2004); and for (3) intentional infliction of emotional distress. Finding disputed material issues of fact on the statutory claims against Byrd's employer, we reverse. We affirm the dismissal of the intentional infliction of emotional distress count and all counts against the individual defendant.
The legal parameters of our review are clear. An order granting summary judgment is reviewed de novo. See Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Summary judgment is proper "only when there are no genuine issues of material fact conclusively shown from the record and the movant is entitled to judgment as a matter of law. All doubts and inferences must be resolved against the moving party, and if there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004) (quoting Reeves v. N. Broward Hosp. Dist., 821 So.2d 319, 321 (Fla. 4th DCA 2002)) (citation omitted). "An issue of fact is `material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Chockla, 47 F.Supp.2d at 1368-69 (citing Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997)).
"When reviewing a ruling on summary judgment, an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party." City of Lauderhill v. Rhames, 864 So.2d 432, 434 n. 1 (Fla. 4th DCA 2003). Where credibility issues impact the determination of material facts, summary judgment is not appropriate. See Kuczkir v. Martell, 480 So.2d 700 (Fla. 4th DCA 1985).
Both parties have cited federal district and circuit court cases. To the extent that the federal cases permit summary judgment based on Federal Rule of Civil Procedure 56 as interpreted in Celotex *924 Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), they are of limited precedential value in Florida summary judgment cases. Florida places a higher burden on a party moving for summary judgment in state court, requiring the movant to: "[S]how conclusively that no material issues remain for trial." Visingardi v. Tirone, 193 So.2d 601, 604 (Fla.1966), see 5G's Car Sales, Inc. v. Florida Dep't of Law Enforcement, 581 So.2d 212 (Fla. 3d DCA 1991); Green v. CSX Transp., Inc., 626 So.2d 974 (Fla. 1st DCA 1993).
In November 2003, Byrd began employment as a cashier at a Wendy's restaurant owned by BT Foods. Early on, Byrd told her supervisor, Rose Johnson, that she was HIV positive. Johnson conveyed this information to the store manager, Lynzell Hicks, who reported it to his supervisor, appellee Thomas Miko.
At the time of Byrd's employment, BT Foods had a policy against discrimination and harassment. Additionally, BT Foods' attendance policy stated that:
If you NO CALL/NO SHOW, you will be required to have a note from an emergency room, etc. or you will be terminated. Phones have been around long enough and most of you should know how to use a telephone by now. If you're not going to be able to make it in to work, you need to call (collect if necessary!), so the manager can get someone to cover your shift.
If an employee called in sick, the policy did not require the employee to produce medical certification; an employee who phoned in and notified BT Foods of an illness-induced absence was able to return to work without providing medical certification, so long as the employee had no "visible condition." Two employees submitted a doctor's note to excuse their absences. For these non-HIV illnesses, management did not question doctor's notes.
In March 2004, Byrd missed work due to a hospital visit related to her HIV condition. She provided Johnson with a copy of a hospital document describing the reasons for her absence, even though Johnson did not require one. During that same month, Johnson told Byrd that she "never told the management team" at BT Foods about Byrd's HIV condition because "[o]nce the higher authority find out that you are sick, you know they're going to try to take this job from you, right?"
In June, 2004, Byrd missed a number of shifts due to her condition. Johnson told her that to come back to work Byrd would need to bring in a doctor's note authorizing her return.
On June 17, Byrd and her boyfriend went to the office of her primary care physician, Dr. Gary Richmond. Nurse Appleby wrote Byrd a "Return to Work Certification" confirming that Byrd was "capable of returning to work after having experienced a bout of gastritis which was secondary to anti-viral medications" Ms. Byrd was then taking for her HIV condition. The certification was a prescription size note containing: 1) the title "Return to Work or School Certification" preprinted on the top; 2) Dr. Richmond's name, address, and telephone number; 3) the handwritten date, 6/17/04; 4) Byrd's handwritten name; 5) the certification that Byrd was under care for gastritis; (5) the indication that Byrd would be able to return to work on June 19; and (6) Nurse Appleby's signature.
Byrd's boyfriend brought the "Return to Work Certification" to Johnson, since Byrd was too sick to submit it herself. Johnson told the boyfriend that she thought the note was a "fake" one that Byrd had "made up on the computer." Johnson told *925 the boyfriend that Byrd needed to provide the restaurant with a "harder" note before she would be allowed to return to work.
In an affidavit filed by BT Foods, Johnson contended that she never saw "any note from a doctor, doctor's office or hospital." Johnson claimed that she saw only a crinkled up piece of paper with a handwritten phone number. On summary judgment, BT Foods argued that Johnson would have been entitled to refuse Dr. Richmond's certification, had she received the note as Byrd claimed.
Construing the record in the light most favorable to Byrd, from mid-June to early July, BT Foods' representatives gave Byrd the runaround: they said they were putting her on the shift she requested, but never did; they promised her a raise that never materialized; they told her to report for work at the Coral Springs restaurant, but failed to put her on the schedule; they dodged her phone calls; they told her to report to Coral Springs for work on July 1, but did not allow her to clock in; and they assigned her to the Turtle Run location, but when Byrd reported for work, none of the managers knew who she was or why she was there.
The trial court granted BT Foods' motion for summary judgment on all three counts of the amended complaint.

Florida Civil Rights Act of 1992, sections 760.01-760.11, Florida Statutes (2004)
The FCRA provides that it is unlawful for an employer to "discharge or fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." § 760.10(1)(a), Fla. Stat. (2004). The FCRA is modeled after Title VII, so that federal case law regarding Title VII is applicable to construe the Act. See Castleberry v. Edward M. Chadbourne, Inc., 810 So.2d 1028, 1030 (Fla. 1st DCA 2002).
Although the FCRA does not mention HIV discrimination, this court has recognized that HIV positive status may be a "handicap" within the meaning of the statute. See McCaw Cellular Commc'ns of Fla. v. Kwiatek, 763 So.2d 1063 (Fla. 4th DCA 1999); Solorio v. Am. Airlines, Inc., No. 00-3780-CIV, 2002 WL 485284, *3 n. 2 (S.D.Fla. Feb.28, 2002). As applied to discrimination based on a handicap, the FCRA is construed in conformity with the federal Americans with Disabilities Act (ADA). McCaw, 763 So.2d at 1065. As we discussed in McCaw,
The ADA provides that a "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job. 42 U.S.C.A. § 12111(8). If a qualified individual with a disability can perform the essential functions of the job with reasonable accommodation, then the employer is required to provide the accommodation unless doing so would constitute an undue hardship for the employer. 42 U.S.C.A. § 12112(b)(5)(A). Reasonable accommodations to the employee may include, but are not limited to, additional unpaid leave, job restructuring, a modified work schedule, or reassignment. 42 U.S.C.A. § 12112(9)(B).
Id.
To establish a prima facie case of HIV discrimination under the FCRA, Byrd must prove: (1) that she is a handicapped person within the meaning of section 760.10(1)(a); (2) that she is a qualified individual; and (3) that BT Foods discriminated against her on the basis of her disability. See Earl v. Mervyns, 207 F.3d *926 1361, 1365 (11th Cir.2000); Pritchard v. S. Co. Servs., 92 F.3d 1130 (11th Cir.1996). The trial court agreed with BT Foods that Byrd did not meet the first and third prongs.
Regarding the first element of a prima facie case, the FCRA does not define the term "handicap." We therefore look to the ADA's definition of a "disability." See Ross v. Jim Adams Ford, Inc., 871 So.2d 312 (Fla. 2d DCA 2004). The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(2). "Major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); see 45 C.F.R. § 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2)(1997).
To support the argument that she is disabled, Byrd relies on Bragdon, where an HIV infected patient sued a dentist who refused to treat her in his office. In Bragdon, the Supreme Court held that even though the plaintiff's HIV condition was asymptomatic, it constituted a disability under the ADA because it was a physical impairment that substantially limited the plaintiff in the major life activity of reproduction. 524 U.S. at 639-48, 118 S.Ct. 2196.
Byrd argues that, like the plaintiff in Bragdon, her HIV positive status also substantially limits her in the major life activity of "reproduction" and "child bearing." However, the Court in Bragdon declined to create a bright line rule, stating that it "need not address whether HIV infection is a per se disability." Id.
In Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Supreme Court declared that whether a person is disabled under the ADA is an "individualized inquiry." It stated:
The definition of disability . . . requires that disabilities be evaluated `with respect to an individual' and be determined based on whether an impairment substantially limits the `major life activities of such individual.' Thus, whether a person has a disability under the ADA is an individualized inquiry.
Id. at 484, 119 S.Ct. 2139; see Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 185, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (reiterating that "Congress intended the existence of a disability to be determined in such a case-by-case manner").
Reading Bragdon together with Sutton, we conclude that whether an HIV infected individual is disabled under the ADA or handicapped under the FCRA turns on the facts of each case. See Solorio, 2002 WL 485284, at 5.
An individualized inquiry of the record in the light most favorable to Byrd supports her claim of a handicap under the FCRA. In addition to arguing that her HIV status substantially limits her in the major life activity of "reproduction," like the plaintiff in Bragdon, Byrd's filings in opposition to summary judgment demonstrated that HIV substantially limits her in the major life activities of breathing and working. While Byrd said that she was able to perform her Wendy's job, including running the drive-thru, operating the front register, preparing food, and washing the dishes, she also stated that she was "overworked" and sick "every other day" with vomiting, diarrhea, stomach pains, and shortness of breath. Byrd requested accommodations related to her HIV status by asking that her shift change from *927 nights to days.[2] For these reasons, we find that Byrd satisfied the "handicap" prong of her prima facie case.
The trial court also found that Byrd "cannot satisfy the third prong" of a prima facie case of discrimination, because she "failed to demonstrate that she was discriminated against as a result of her HIV status."
The parties argue that Byrd relies on circumstantial evidence to support her discrimination claim. Thus the tripartite analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. Under the McDonnell Douglas framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff successfully presents a prima facie case, the defendant employer has the burden of producing evidence of some "legitimate, nondiscriminatory reason" for the adverse employment action. Id. at 802, 93 S.Ct. 1817. If the defendant carries its burden of producing some legitimate nondiscriminatory reason for its employment action, the plaintiff has the opportunity to prove that the proffered reason was merely a pretext for the defendant's actions. Id. at 804, 93 S.Ct. 1817. The ultimate burden of proving intentional discrimination against the plaintiff remains with the plaintiff at all times. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
Viewing the record in the light most favorable to her, Byrd presented a sufficient case of unlawful discrimination to survive summary judgment. Her immediate supervisor suggested that Byrd's illness placed her job at risk, that the "higher authority" at BT Foods would "take this job" from her once they learned of her HIV status. In compliance with company policy, Byrd provided a valid doctor's return-to-work note, but her employer refused to accept it, unlike its treatment of employees with other illnesses. The affidavit from Byrd's supervisor stated that Byrd brought in no "note from a doctor, doctor's office or hospital," but only a scrap of paper with a handwritten phone number on it. Johnson stated in her deposition that if she had seen the note in question, then Byrd "would be working." Consequently, whether Byrd complied with company policy concerning the note is a disputed factual issue. The employer's argument that it could have reasonably insisted on further documentation had it received the note misses the point; a lie about receiving the facially valid doctor's note would be evidence of the employer's discriminatory motive. We therefore find that the trial court erred in granting summary judgment on the FCRA claim.
We also reverse the dismissal of the count seeking relief under section 760.50. While we find that section 760.50 and the FCRA impose the identical standards for evaluating employment discrimination, see Solorio, 2002 WL 485284 at n. 2, we agree with Byrd that section 760.50 does not require proof that a plaintiff's HIV condition amounts to a handicap or disability. Nothing in the statute imposes such a requirement; section 760.50(3)(b) prohibits discrimination based upon even the "perceived results" of an HIV test, *928 without reference to the physical condition of the employee.
We affirm the summary judgment of the claim for intentional infliction of emotional distress. To successfully pursue a cause of action for intentional infliction of emotional distress, the plaintiff must show "conduct `so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Allen v. Walker, 810 So.2d 1090, 1091 (Fla. 4th DCA 2002) (quoting Metro. Life Ins. Co. v. McCarson, 467 So.2d 277, 278-79 (Fla.1985) (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965))). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." Gandy v. Trans World Computer Tech. Group, 787 So.2d 116, 119 (Fla. 2d DCA 2001) (citing Ponton v. Scarfone, 468 So.2d 1009 (Fla. 2d DCA 1985)). The teasing of Byrd by other employees did not rise to the level of outrageous conduct required to sustain the tort.
We affirm the dismissal of all claims against Thomas Miko individually. See Huck v. Mega Nursing Servs., Inc., 989 F.Supp. 1462 (S.D.Fla.1997).
Affirmed in part, reversed in part, and remanded.
HAZOURI, J., and MAASS, ELIZABETH T., Associate Judge, concur.
NOTES
[1] 

HIV has been identified as the virus that causes AIDS. See Lyn R. Frumkin & John M. Leonard, Questions and Answers on AIDS 1, 5-6 (3d ed.1997); see also Ray v. Sch. Dist., 666 F.Supp. 1524, 1529 (M.D.Fla.1987) ("[C]urrent medical researchers have concluded that AIDS is caused by the infection with human immuno-deficiency virus (HIV).").
Chockla v. Celebrity Cruise Lines, Inc., 47 F.Supp.2d 1365 (S.D.Fla.1999).
[2] Although the trial court found in its order that Byrd "never requested any accommodations related to her HIV positive condition," our review of the record indicates that this was a disputed issue of fact.