HAZOURI, J.,
dissenting.
I respectfully dissent and would reverse the granting of the summary judgment on Goheagan’s claim of bad faith. An insurer’s duty toward its insured is best summarized by the Florida Supreme Court’s decision in Boston Old Colony Insurance Company v. Gutierrez, 386 So.2d 783 (Fla.1980):
An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the *1144 insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.... The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.
Id. at 785 (citations omitted). This duty of good faith has been reaffirmed in numerous cases decided since Boston Old Colony and as recently as in the Florida Supreme Court decision in Borges v. Infinity Insurance Co., 896 So.2d 665 (Fla.2004).
This statement in Boston Old Colony is a more complete definition of what the duties and obligations of the insurance company are toward its insured than is reflected in the majority opinion. The majority appears to accept a new standard as outlined in its reference to the article appearing in the Florida Bar Journal entitled The Good Faith, Bad Faith, and Ugly Set-up of Insurance Claims Settlement, 85 Fla. Bar. J. 9, 14-15 (Feb.2011), wherein it states that “the claim for bad faith failure to settle should be exactly that — only for situations in which an insurer truly is refusing in bad faith to settle, not when it is in fact attempting to settle the claim.” This would insulate insurers from a claim of bad faith by merely attempting to settle the claim no matter how anemic the attempts were. That is a new standard and not one established by our Florida Supreme Court.
What Boston Old Colony points out is that an insurer has a duty to use the same degree of care and diligence that a person of ordinary care and prudence should exercise in the management of its own business. In other words, faced with the prospect of paying the entire amount of the judgment, would AVIC have immediately tendered its limits and advised Mrs. Go-heagan that it was acknowledging liability and had only $10,000 worth of liability insurance available to cover the claim. Boston Old Colony also emphasizes the fact that the insured, in this case Mr. Perkins, pursuant to the insurance policy had surrendered to AVIC all control over the handling of the claim, including all decisions with regard to litigation and settlement. AVIC has a fiduciary duty to Mr. Perkins. It is up to AVIC to see to it that he was not exposed to a judgment in excess of his policy limits.
Mr. Perkins fulfilled all of his obligations to AVIC. He paid his premiums timely, reported the accident promptly, cooperated fully with AVIC in the investigation of the accident and the handling of the claim. The question remains for a jury to decide, did AVIC fulfill all of its obligations to Mr. Perkins.
In moving for summary judgment AVIC asserted that it acted fairly and honestly toward its insured with due regard for his interest but was prevented from entering into settlement negotiation or consummating a settlement for two reasons: (1) that Ms. Swaby was in a coma and there was no one to make the offer to; and (2) that because AVIC had been made aware of the fact that there was a lawyer involved, Florida Administrative Code 69 and 69b-220.201[8] prohibited them from communi- *1145 eating or negotiating a settlement with Ms. Swaby or her mother, Ms. Goheagan. In opposition to the motion, Goheagan filed the affidavit and deposition of Mark Lemke, an expert witness on insurance claim handling. He gave his opinion that AVIC breached its duty of good faith by failing to proactively adjust the claim and timely tender the policy limits. “The claim should have immediately been recognized as one requiring tender of the $10,000 policy limits. Steps should have been taken to immediately tender the $10,000 policy limits to Molly Swaby. This did not happen.” He opined that AVIC failed to recognize the urgency of tendering the check and there were no ethical prohibitions that would have prevented Grieser from tendering a check.
At the hearing on the motion for summary judgment, AVIC argued that the evidence of bad faith was insufficient as a matter of law. The trial court granted AVIC’s motion for summary judgment based upon AVIC’s first point that because Ms. Swaby was in a coma and no guardianship had been set up prior to her death there was no one to whom to make an offer. At the hearing on the motion for summary judgment the following colloquy occurred between the court and Goheag-an’s attorney, Mr. Smith:
MR. SMITH: ... In this case, Your Honor, the insured was drunk at 8:00 in the morning on a Saturday morning, .19 blood alcohol. He’s going about 60 miles an hour on Military Trail and he rear ends a line of cars that are lawfully stopped for a red light.
THE COURT: Mr. Smith, with all due respect, this has nothing to do with the underlying facts of the case. It has to do with the actions of the insurance company. Let’s stick to that.
MR. SMITH: Yes, Your Honor. And it’s our position, Your Honor, given those facts, which are undisputed, that there should have been an immediate tender of the policy limits.
THE COURT: To whom?
MR. SMITH: If I could — if you’ll bear with me, Judge, I will get to that.
On March 1st of '07, a few days after the accident, the insurance company had concluded this was a case to pay. They knew where the claimant was, and they knew she was in critical condition. Mr. Green [attorney for AVIC] pointed out to Your Honor that Ms. Goheagan is the mother of Ms. Swaby. I think the court needs to understand, I’m sure the court does understand, Ms. Swaby was in her 40s. Ms. Swaby was not a minor. Ms. Swaby was of age. The insurance company had no evidence that Ms. Goheag-an was empowered by way of a guardianship or otherwise to act on her behalf at that point.
Their argument, Your Honor, is that the adjuster code of ethics bars them from action. There is no mention in the adjuster’s log that she felt constrained because of the adjuster code of ethics. That code is not mentioned anywhere. And it’s significant, Your Honor, that the property damage adjuster from the same insurance company that was operating out of the same log had direct *1146 communication with Ms. Goheagan to settle the property damage claim. Ms. Goheagan, the mother, owned the car that her daughter was driving at the time. A reasonable jury could conclude that this argument of adjuster code of ethics is something that occurred after the fact because another employee of the same insurance company dealt with the mother on the property damage claim. They had a direct communication to the mother.
I asked the adjuster, Your Honor, in her deposition if Molly Swaby had an attorney. She says in her deposition, I’m prohibited from dealing with her. At Page 77 she says I don’t believe Molly Swaby ever had one because she was unable to retain one because she was in a coma. It’s our position, Your Honor, and it is our expert’s opinion that the adjuster certainly wasn’t prohibited from disclosing the policy limits. That never happened. They never said we only have $10,000 in coverage. The adjuster was not prohibited from expressing a desire to pay. That never happened. The adjuster never said we have limited coverage and I want to pay. The adjuster never sent any letters at all to Ms. Goheagan or Ms. Swaby that said anything. No letters were sent and the president of the company, when I deposed him, Judge, said yeah, she should have sent the letter. I think that in and of itself creates an issue of fact. There was no prohibition and our expert has testified that she could have tendered a check made payable to Molly Swaby and her attorney, identity unknown or somehow qualified the check so it couldn’t be negotiated and forwarded the check.
Your Honor, I’ve given the court the affidavit of Mark Lemke who’s been in the insurance business for over 30 years. It is not conclusory. He explains why American Vehicle did not adjust this claim properly. He explains that they should have immediately tendered the policy limits, and this did not happen. He explains why there were not prohibitions under the adjuster code of ethics that would have prevented a tender, that a tender should have occurred as an urgent matter, that the supervision of the claim fell below industry standards, that communications with the insured fell below industry standards and the insured was not adequately advised of the exposure and his liability for the exposure. They could have tendered the check.
THE COURT: With all due respect, Mr. Smith, you still didn’t answer my question. To whom would they have tendered?
MR. SMITH: They could have tendered the check to Molly Swaby, Your Honor.
THE COURT: In a coma who never recovered?
MR. SMITH: There’s a difference between tendering the check and her ability to cash the check.
THE COURT: The law doesn’t require a futile act, Mr. Smith. If they knew she was in a coma why would they tender the check to her?
MR. SMITH: They could have tendered the check, Your Honor, to Olive Goheag-an.
THE COURT: Who was not authorized to accept by your own admission.
“The standard of review of a summary judgment is de novo. In reviewing a summary judgment, this Court must consider all record evidence in a light most favorable to the non-moving party. If material facts are at issue and the slightest doubt exists, summary judgment must be reversed.” See Mills v. State Farm Mut. Auto. Ins. Co., 27 So.3d 95, 96 (Fla. 1st DCA 2010) (citations omitted).
*1147 “In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the ‘totality of the circumstances’ standard.” Berges v. Infinity Ins. Co., 896 So.2d 665, 680 (Fla.2004) (citing State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63 (Fla.1995)). “Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause.” Powell v. Prudential Prop. & Cas. Co., 584 So.2d 12, 14 (Fla. 3d DCA 1991).
Goheagan argues that there remained genuine issues of material fact which precluded summary judgment. She argues that the issue of whether an insurer acted in bad faith is decided by reviewing the steps taken by the insurer to offer to settle or tender, not the actions of the claimant. She asserts there is a dispute as to whether Goheagan’s retention of an attorney was an impediment to communication of a settlement offer and whether the fact that Swaby was in a coma prevented any possible settlement so there was no point in making the offer or tender. I agree.
In Powell, the court held:
Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. Id. at 14. See also Farmers Ins. Exchange v. Schropp, 222 Kan. 612, 567 P.2d 1359, 1366 (1977) (“duty to initiate settlement negotiations arises if carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured”); Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 323 A.2d 495 (1974) (where substantial injuries and potential liability of insured are obvious, failure to offer policy limits constitutes bad faith even where there is no assurance that action can be settled); Alt v. American Family Mut. Ins. Co., 71 Wis.2d 340, 237 N.W.2d 706, 713 (1976) (insurer has affirmative duty to investigate possibilities of settlement); Eastham v. Oregon Auto. Ins. Co., 273 Or. 600, 540 P.2d 364 (1975) (insurer may be found to have acted in bad faith for delaying an offer to settle). See generally 14 Couch on Insurance 2d § 51:17 (Rev. ed. 1982); J. Appleman, Insurance Law and Practice § 4711, at 383 (Rev. ed. 1979).
Powell, 584 So.2d at 14.
Clearly the trial court erred in granting summary judgment based on its assumption there could be no bad faith because Swaby was in a coma and therefore there was no one to whom to make an offer. See Berges, 896 So.2d at 675 (a guardian or personal representative who has not yet been appointed can negotiate a settlement on behalf of a claimant). Furthermore there is no case law to support AVIC’s argument that it could not have at least made a written offer and/or tender to Swa-by through her mother. It is unclear at what point an attorney had been retained. If in fact Goheagan had retained an attorney, the assistance of the attorney may have been necessary to finalize a settlement but would not have precluded an offer. With the catastrophic injuries, clear liability, and the limited available liability limits of $10,000, a jury could decide that there was not much to negotiate; and the representation by an attorney would not have been an impediment to at least make an offer to settle.
The enormous financial exposure to Mr. Perkins was a ticking time bomb. Suit could be filed at any time. Any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith. See Gutierrez, 386 So.2d at 785 (“The question of failure to act in good faith with due regard for the *1148 interests of the insured is for the jury.”); see also Campbell v. Gov’t Ems. Ins. Co., 306 So.2d 525, 530-31 (Fla.1974) (“[Reasonable diligence and ordinary care [are] material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact-not of law.”).
The majority opinion cites to several federal district court cases outlining factual circumstances which warranted the granting of a summary judgment in bad faith cases. However, as this court noted in Byrd v. BT Foods Inc., 948 So.2d 921 (Fla. 4th DCA 2007), “federal cases [which] permit summary judgment based on Federal Rule of Civil Procedure 56 ... are of limited precedential value in Florida summary judgment cases. Florida places a higher burden on a party moving for summary judgment in state court, requiring the movant to: ‘[S]how conclusively that no material issues remain for trial.’ ” Id. at 923-24 (citation omitted). We also noted in Byrd that “[w]hen reviewing a ruling on a summary judgment, an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party.” Id. at 923. “Where credibility issues impact the determination of material facts, summary judgment is not appropriate.” Id.
The majority gives only superficial consideration to the affidavit and deposition of Goheagan’s expert, Mark Lemke, filed in opposition to AVIC’s motion for summary judgment. As an expert in handling insurance claims, he is exceptionally qualified to give opinions concerning the handling of a personal injury claim such as the one in this case. Additionally, the majority fails to address the fact the trial court did not do a comprehensive evaluation of the record which included depositions and affidavits but simply concluded that summary judgment should be granted based upon the fact that Molly Swaby was in a coma and there was no one to whom to make an offer to settle.
The majority is also incorrect in relying upon section 624.155, Florida Statutes, as the basis and standard for what constitutes bad faith. The complaint in this case was not based upon section 624.155 but upon a common law claim of bad faith. Section 624.155(8) makes it clear that:
The civil remedy specified in 624.155 does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to common law of this state. Any person may obtain a judgment under either the common-law remedy of bad faith or the statutory remedy, but shall not be entitled to a judgment under both remedies.
§ 624.155(8), Fla. Stat. (2007). It is clear based upon decisions by the Florida Supreme Court and the district courts of this state that “bad faith” must be considered in light of the totality of the circumstances and is generally considered a question for the jury.
By my dissent I would not hold as a matter of law that AVIC was guilty of bad faith. It may be that based upon the facts of this case a jury would conclude that AVIC acted reasonably and prudently in attempting to protect Mr. Perkins. However, there are disputed issues of the facts and issues of credibility that must be resolved and that cannot be done by way of a summary judgment. Therefore, I would reverse this granting of a summary judgment and remand for a jury trial.

. (i) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection the *1145 term "third-party claimant” does not include the insured or the insured’s resident relatives.
[[Image here]]
(1) An adjuster shall not attempt to negotiate with or obtain any statement from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.