**Eliuth ALVAREZ, Plaintiff,**

v.

**ROYAL ATLANTIC DEVELOPERS, INC., Defendant.**

No. 07–21333–CIV.

United States District Court, S.D. Florida.

Aug. 21, 2008.

Martin Eric Leach, Feiler & Leach, Coral Gables, FL, for Plaintiff.

Jennifer Laurel Poole, Kevin Eugene Vance, Michael William Casey, III, Epstein Becker & Green, P.C., Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E.42) AND CLOSING CASE

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on the Motion of Defendant Royal Atlantic Developers, Inc. ("Defendant" or "Royal Atlantic") for Summary Judgment ("Motion," D.E. 42), filed on June 23, 2008. (*See also* Defendant's Statement of Material Facts in Support of its Motion for Summary Judgment ("Def. SOF," D.E. 43).) On July 23, 2008, Plaintiff Eliuth M. Alvarez ("Plaintiff" or "Alvarez") filed an Amended Memorandum of Law in Opposition to the Motion ("Response," D.E. 69; *see also* Plaintiff's Amended Rule 7.5 Re-

sponse with Incorporated Statement of Material Facts ("Pl. SOF," D.E. 70)). On August 4, 2008, Defendant filed its reply ("Reply," D.E. 77). Having considered the Motion, the Response, the Reply, and the record, the Court finds as follows.

## I. Background

On May 23, 2007, Alvarez brought this employment discrimination action against Royal Atlantic. (*See* Complaint, D.E. 1.) Alvarez asserts the following claims: (1) discrimination in violation of 42 U.S.C. Section 2000(e)–2(a)(1); (2) retaliation in violation of 42 U.S.C. Section 2000(e)–3(a); discrimination in violation of Florida Civil Rights Act, Fla. Stat. Ch. 760; and (4) retaliation in violation of the Florida Civil Rights Act, Fla. Stat. Ch. 760.[1] Based on these claims, Alvarez seeks a variety of damages, as well as unspecified "injunctive relief," back pay, front pay, the costs of this action, and attorney's fees. (*See id.*)

The following material facts are undisputed by the parties, unless otherwise noted. Royal Atlantic is owned by the Verdezoto family, who are of Ecuadorian descent. (*Id.* ¶¶ 1–2.) The Verdezoto family also owns Royal Flowers International, Inc. ("Royal Flowers"), a flower distribution company, that operates out of the same location as Royal Atlantic in Miami; however, the companies are independent. (*Id.* ¶ 1.) Edwin Verdezoto ("Edwin") is President of Royal Flowers and CEO of Royal Atlantic. (*Id.* ¶ 3.) Heidi Verdezoto ("Heidi") is CFO of Royal Flowers and CFO and a director for Royal Atlantic. (*Id.* ¶ 4.) Heidi directly reports to Edwin, who is her brother. (*Id.* ¶ 4.)

During the relevant period, the two companies employed 56 employees of various descent, including Hispanic employees from Colombia, Cuba, the Dominican Republic, Ecuador, Guatemala, Honduras, Nicaragua, Panama, Peru, Puerto Rico, and Venezuela. (*Id.* ¶ 2.)

Alvarez was employed by Royal Atlantic as controller from May 2, 2006 to October 4, 2006, but performed work for both Royal Atlantic and Royal Flowers. (Def. SOF ¶ 7; *see also* Pl. SOF ¶ 7.) Her job duties included various aspects of managing finances, as well as supervision of Joel Underwood ("Underwood"), who was the assistant controller for Royal Atlantic, and Rosario Ruiz ("Ruiz"), who was the assistant controller for Royal Flowers. (*Id.* ¶ 8.) When Alvarez was hired, the accounting books were approximately one year behind, and one of Alvarez's primary responsibilities was to bring the accounting books up to date. (*Id.* ¶ 9.) Prior to Alvarez's employment, from September 2005 through March 2006, Royal Atlantic had two other controllers, both of whom were "non-Cuban"; each were terminated after a few months because they did not meet expectations. (*Id.* ¶ 6.)

Defendant asserts, however, that Alvarez's performance was deficient for several reasons, including, *inter alia,* because Alvarez excessively delegated assignments, which overwhelmed the accounting staff and caused them to fail to complete or to improperly perform assignments; Alvarez failed to supervise and manage the accounting staff; Alvarez was aggressive and rude towards other staff and to Heidi; there were always mistakes in Alvarez's work; Alvarez failed to purge monthly re-

---

**1.** The Complaint also contained a claim for negligent supervision; however, on April 7, 2008, this Court granted Plaintiff's unopposed motion to dismiss the negligent supervision claim from the Complaint. (*See* D.E. 32, 33.)

ports and complete reconciliations; Alvarez failed to timely pay vendors; Alvarez lost sensitive and important documents; and Alvarez failed to arrive for work on time. (*See* Def. SOF ¶¶ 10–20.) All of these facts are controverted by Plaintiff. (*See* Pl. SOF ¶¶ 10–20.)

Defendant contends that Heidi had to remain involved in the day-to-day activities of the accounting department, and that, within three (3) months of Alvarez's employment, Heidi concluded that Alvarez was unfit for the position. (Def. SOF ¶ 20.) Alvarez contends that Heidi had "very little involvement" with the accounting department and was not actively involved in any aspect of Alvarez's work. (*See* Declaration of Alvarez, D.E. 66–3 ¶ 7.) In any event, in or about September 2006, Edwin and Heidi discussed Alvarez's poor job performance (which was several weeks before Alvarez was actually terminated) and decided to terminate Alvarez after they found her replacement. (Def. SOF ¶¶ 21–22.) Heidi began to search for a replacement by reviewing resumes online, and in the process, discovered Alvarez's resume posted online, which she assumed meant Alvarez was looking for other employment. (*Id.*) Indeed, Alvarez's resume was posted online, and Alvarez had applied for a job with Miami–Dade Community College on September 20, 2006. (*See* D.E. 66–3 ¶ 17; *see also* D.E. 48–2.) After Heidi interviewed—and offered the posi-

tion at an industry-standard salary—to Alex Sanchez (a candidate who, unbeknownst to Heidi, was acquainted with Alvarez and informed Alvarez that Defendant was seeking to replace her), Alvarez confronted Heidi, who denied searching for Alvarez's replacement.[2] (Def. SOF ¶¶ 23–24; Pl. SOF ¶ 23–24.) Heidi felt physically threatened by Alvarez during the confrontation, and, under pressure from Alvarez, assured Alvarez that she was not being replaced. (Def. SOF ¶ 25.) Alvarez, however, did not believe her. (*See* D.E. 50–3.)

On September 27, 2008, Don Darrach ("Darrach"), who is President and General Counsel of Royal Atlantic, and who reports directly to Edwin (*see* Def. SOF ¶ 5), questioned Alvarez regarding monthly financial statements for a certain property, which Alvarez admitted she had not reviewed. (Def. SOF ¶ 29.) Alvarez suffered a panic attack after the meeting. (*Id.*)

On October 3, 2006, Alvarez sent Edwin a letter, which stated, *inter alia*, that she knew Royal Atlantic wanted to replace her. (*See id.; see also* Def. SOF ¶ 30.) The letter further alleged, for the first time, that Alvarez felt the reason she was going to be fired was because of discrimination against Alvarez because she is Cuban. (*Id.* ¶ 31.) Alvarez also stated that she believed Ruiz, the assistant controller for Royal Flowers, was also going to be fired because she was Cuban as well.[3]

---

**2.** In searching for Alvarez's replacement, Heidi also interviewed another candidate, Philip Weikert, in addition to Alex Sanchez. (*See* Def. SOF ¶ 23.) Apparently, Alex Sanchez did not accept the job, as the record reflects that Philip Weikert was also offered the controller position, although Philip Weikert did not commence employment with Defendant either. (*Id.* ¶ 40.) Heidi does not know the national origin of either candidate. (*Id.* ¶ 23.) The record further reflects that, to

date, Alvarez's former position as controller remains unfilled by Defendant. (*Id.* ¶ 40.)

**3.** In fact, Royal Flowers terminated Ruiz on October 10, 2006. (Def. SOF ¶ 52.) Nonetheless, Ruiz admits (1) that she never heard anyone say that Alvarez was terminated because she [Alvarez] was Cuban; (2) that she [Ruiz] never heard Darrach make any remarks indicating that he hated Cubans; and (3) that Ruiz never heard any other manager,

(D.E.50–3.) In addition, the letter stated that Darrach had made "several comments about Cubans, putting [Cubans] down"; that, less than one month before, another Cuban employee was fired; that he and Alvarez heard comments "putting us Cubans down"; that other Cuban employees have been "harassed and pressured a lot more than other employees"; and that this was "a clear case of discrimination not for Latin people as a whole but toward Cubans in general." (*See id.*) The letter concludes by stating that "[t]his is a formal complaint . . . for discrimination," by "accus[ing] Don Darrach of mistreatment due to racism and discrimination for [Alvarez's] Cuban nationality"; and by offering to "discuss this" with Defendant and "look for an agreement." (*Id.* at 2.)

After seeing the letter, Edwin had a conference call with Heidi and with Darrach, who denied the discrimination allegations. (Def. SOF ¶ 36; *see also* D.E. 47–2 at 30; D.E. 46–2 at 115.) Heidi called human resources to see if there were any complaints regarding discrimination raised by Alvarez, and there were none. (D.E. 46–2 at 122.) Edwin felt the allegations regarding Darrach's discrimination was a lie. (D.E. 44–2 at 40.) On October 4, 2006, Edwin terminated Alvarez because, as Defendant contends, it was clear from the letter that all parties involved were "unhappy," and because Edwin and Heidi became concerned about sabotage of the computer and financial systems bandied by Alvarez and how the accounts were managed. (*See, e.g., id.* at 52–55; *see also* D.E. 46–2 at 113.) Heidi's own deposition testimony reveals that she and Edwin "made the decision . . . to get rid of [Alva-

rez]" and that the decision was agreed upon by both she and Edwin. (D.E. 46–2 at 114.)

It is undisputed that Alvarez does not feel that Edwin is prejudiced against Cubans. (Def. SOF ¶ 41; Pl. SOF ¶ 41.) Rather, Alvarez believes that Heidi is prejudiced against Cubans because "a large of the Cubans [sic] who work [for Defendant] seem to get fired without any reason and because of the way the employees in [Alvarez's] department were treated differently." (Def. SOF ¶ 42; Pl. SOF ¶ 42.) Moreover, Alvarez admits she never heard Darrach, Heidi, or any other manager/supervisor tell any racial or ethnic jokes, nor did she hear any member of management suggest or imply that she would be terminated because of her national origin or her October 3rd letter. (Def. SOF ¶ 48; Pl. SOF ¶ 48.) In fact, it is undisputed that Alvarez alleges that she directly heard only one disparaging statement made by Darrach, namely, that "Cubans are dumb"; that she does not recall when this happened; and that she did not hear anything that was said before or after he allegedly made the statement. (Def. SOF ¶ 47; Pl. SOF ¶ 47.)

## II. Defendant's Motion

In its Motion, Defendant first contends that Alvarez is unable to establish a prima facie case of discrimination as her allegations fail to raise an inference of discrimination. In essence, Defendant argues that Darrach's remark that "Cubans are dumb," even if true, is a stray remark which does not satisfy Alvarez's initial burden of establishing a prima facie case of discrimination, and that, even when taken

supervisor, or officer make remarks indicated a prejudice against Cubans. (Def. SOF ¶ 52; Pl. SOF ¶ 52.)

with Alvarez's additional allegations, which Defendant characterizes as vague, conclusory, and speculative, Alvarez has not established a *prima facie* case of discrimination. Defendant also argues that Alvarez was not qualified for her job; that Alvarez has no comparators and fails to identify any non-Cuban employee who was treated more favorably than she; and that, even if Alvarez could establish a *prima facie* case of discrimination, Defendant has provided a legitimate, non-discriminatory reason for her termination, namely, Alvarez's poor performance, which Alvarez cannot legitimately rebut. (*See* D.E. 42 at 7–15.) As to Alvarez's retaliation claims, Defendant argues that such claims fail because Alvarez cannot establish that her termination was causally connected to her complaint, and, even if she could establish a *prima facie* case of retaliation, she cannot establish that Defendant's legitimate, non-retaliatory reasons for her termination were pretextual, given that the record shows that, *inter alia*, the decision to terminate Alvarez was made several weeks before Alvarez wrote the letter. (*See id.* at 16–23.)

In her Response, Alvarez asserts, *inter alia*, that she was qualified for the job; that she has met the "comparator" requirement because "where, as here, an employer falsely claims that an employee is guilty of poor performance as an excuse to terminate her employment, she is being treated less favorably than someone similarly situated outside her protected class because under those circumstances, the employee is essentially being terminated for no legitimate reason"; that she was never told of any problems and had been employed by Defendant for longer than the probationary period; that she was fired immediately after Edwin received her letter, establishing retaliation; and

that she has established that Defendant's proffered reasons for firing her were pretextual. (*See* D.E. 69.)

In its Reply, Defendant in large part reiterates the arguments presented in its Motion. (*See* D.E. 77.)

## III.  Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142(1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also Fed.R.Civ.P.* 56(e). In meeting this burden the nonmoving party "must do more than simply show that

there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## IV. Analysis

### A. Title VII Discrimination Claim

██ Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Although a plaintiff may establish a *prima facie* case of discrimination in three ways, only one is relevant here, and that is by presenting circumstantial evidence of discriminatory intent. *See Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997).[4]

██ In evaluating Title VII discrimination claims supported by circumstantial ev-

---

4. Defendant argues that Alvarez has failed to establish statistical proof of a pattern of discrimination, and has failed to present direct evidence that her termination was motivated by discrimination. Alvarez fails to challenge these arguments, and her Response addresses only whether she has established a *prima facie* case of discrimination via circumstantial evidence. In any event, in light of the undisputed facts of this case as described above, the Court agrees with Defendant that Alvarez has failed to establish a *prima facie* case of discrimination via statistical proof of a pattern of discrimination by Defendant; Alvarez presented no such evidence. The Court further finds that the sole specific statement proffered by Alvarez in support of her discrimination claim, namely, Darrach's statement that "Cubans are dumb," does not constitute direct evidence that her termination

was motivated by discrimination under the standards set forth by the Eleventh Circuit. *See, e.g., Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998) (Direct evidence is "evidence, which if believed, proves the existence of the fact or issue without inference or presumption"); *Richardson v. Dougherty County, Ga*, 185 Fed. Appx. 785, 787 (11th Cir.2006) (citations omitted) ("[o]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor, constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial evidence"); *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1359 (11th Cir.1999) (internal quotations and citations omitted)

idence, this Circuit uses the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Rice–Lamar v. City of Fort Lauderdale,* 232 F.3d 836, 842–43 (11th Cir.2000). Under the framework established in *McDonnell Douglas,* a plaintiff can establish a *prima facie* case that she was discriminated against in violation of Title VII by showing: (1)she is a member of a protected class; (2) she was subjected to adverse employment action; (3) she was qualified for the job at issue; and (4) she was replaced by a person outside her protected class or was treated less favorably than a similarly-situated individual outside her protected class. *Maynard v. Bd. of Regents,* 342 F.3d 1281, 1289 (11th Cir.2003); *see also Hawkins v. Ceco Corp.,* 883 F.2d 977, 982 (11th Cir.1989).

■ Here, the parties do not dispute that Alvarez is a member of a protected class, nor do they dispute that her termination is the challenged adverse employment action. Although the parties do dispute whether Alvarez was qualified for her job, the Court finds that it need not address that issue, because, for the reasons discussed below, Alvarez has failed to establish that Defendant treated similarly-situated, non-Cuban employees more favorably than her, or that she was replaced by a person outside her protected class.

First, although Alvarez concedes that the "similarly-situated" element must be satisfied where a plaintiff is terminated for misconduct, she nonetheless argues that this element does not apply in this case because she "asserts that she was not

guilty of any misconduct and that the allegation that she was performing poorly was an invention designed to justify the termination of her employment." (D.E. 69 at 7.) Alvarez presents no legal support for this particular argument, and, in any case, the Court does not find that her self-serving assertion that she was not guilty of any misconduct obviates the need for her to establish that Defendant either replaced her with a non-Cuban controller, or treated non-Cuban employees who were similarly situated to Alvarez more favorably than she. *See, e.g., Maynard,* 342 F.3d at 1289 (where terminated plaintiff asserted racial discrimination claim based on circumstantial evidence, plaintiff was required to show that he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class).

Although not entirely clear from her Response, Alvarez next appears to argue that, in any event, she has met the "similarly-situated" element in this case because, as she asserts, she was terminated for no legitimate reason, and thus, she was automatically "treated less favorably than someone similarly situated outside her protected class." (*Id.*) Again, Alvarez makes this conclusory argument without any legal support, and the Court finds none for her proposition. Alvarez does not specifically identify—or present any evidence of—any similarly-situated employees or comparators to herself, nor has she demonstrated that, after she was terminated, a non-Cuban replaced her. As such, Alvarez has not established a *prima facie* case of discrimination. *See, e.g., Dickinson v. Spring-*

("An example of direct evidence would be a management memorandum saying, 'Fire Earley—he is too old' "). Here, Alvarez has presented no direct evidence that anyone em-

ployed by Defendant stated or otherwise represented that Alvarez should be fired because she is Cuban.

*hill Hosps., Inc.,* 187 Fed.Appx. 937, 939 (11th Cir.2006) (unpublished decision) (affirming entry of summary judgment in favor of employer where plaintiff presented no evidence that employer treated similarly-situated employees outside of plaintiff's class more favorably, and where plaintiff failed to identify similarly-situated employees or comparators); *Ivey v. Paulson,* 222 Fed.Appx. 815, 818 (11th Cir. 2007) (unpublished decision) (Caucasian plaintiff failed to establish a *prima facie* case of discrimination where he failed to show that, after he was terminated, a racial minority replaced him). Moreover, the Court notes that the record is devoid of any specific evidence that Defendant treated similarly-situated, non-Cuban employees more favorably than Alvarez. In fact, as Defendant argues, the record contains unchallenged evidence that Defendant had previously hired, and fired, two non-Cuban individuals, each of whom were employed in Alvarez's position of controller for no longer than a few months; that Defendant interviewed two potential candidates to replace Alvarez, without regard to their national origin; that Defendant offered Alex Sanchez the position of controller at a salary that was apparently less than what Alvarez earned in the same position; and that, to date, Defendant has yet to replace Alvarez. As noted above (*see supra* n. 4), the record is also devoid of any direct evidence indicating that Alvarez was terminated because she is Cuban.

For these reasons, the Court concludes that Alvarez has failed to establish a *prima facie* discrimination claim, and that summary judgment in favor of Defendant on Alvarez's Title VII discrimination claim is therefore granted. *See, e.g., McCann v. Tillman,* 526 F.3d 1370, 1375 (11th Cir. 2008) (where plaintiff did not present proper comparators, she failed to establish *pri-* *ma facie* case of discrimination, and the burden was not shifted to defendants to provide a legitimate, nondiscriminatory reason for their actions); *Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1319 (11th Cir.2003) (where plaintiff failed to satisfy "similarly-situated" element, plaintiff failed to establish a *prima facie* case of discrimination and thus the district court's grant of summary judgment was affirmed); *Hendrix v. Snow,* 170 Fed. Appx. 68, 78 (11th Cir.2006) (unpublished decision) (where plaintiff failed to identify a comparator employee who was "similarly situated in all relevant respects" and was "nearly identical to the plaintiff," she failed to establish a *prima facie* case of disparate treatment, and summary judgment in favor of employer was affirmed); *Samuels v. Univ. of S.Ala.,* 153 Fed.Appx. 612, 614 (11th Cir.2005) (unpublished decision) (where plaintiff failed to establish that similarly-situated male employees were treated more favorably, she failed to establish a *prima facie* case of discrimination; thus, burden never shifted to employer to put forth a legitimate, nondiscriminatory reason for the termination, and summary judgment in. employer's favor was affirmed); *see also Marcelin v. Eckerd Corp. of Fla., Inc.,* 2006 WL 923745, **4–5, 2006 U.S. Dist. LEXIS 18097, at *13–14 (M.D.Fla. Apr. 10, 2006) (where Haitian plaintiff failed to identify any non-Haitian similarly-situated employee, and the record further contained evidence of at least one non-Haitian employee who was treated at least as harshly as plaintiff, plaintiff failed to satisfy "similarly-situated" element and such failure was fatal to his claim).

**B.   Title VII Retaliation Claim**

■ A claim for retaliation constitutes a separate and independent violation of Title

VII. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571. 587 (11th Cir.2000). Thus, Alvarez need not prove the underlying claim of discrimination that led to her complaint, so long as she had a reasonable good faith belief that the discrimination existed. *See id.* (citations and quotation marks omitted).

As with her Title VII discrimination claim, Alvarez must first establish a *prima facie* claim of retaliation, which she may do by either direct or circumstantial evidence. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1265 (11th Cir.1999). Nonetheless, as previously noted by the Court above, "only the most blatant remarks, whose intent could mean nothing other than to retaliate on the basis of an impermissible factor, constitute direct evidence of retaliation." *Masso v. Miami–Dade County*, 465 F.Supp.2d 1260, 1264–1265 (S.D.Fla.2006) (citations omitted). As a threshold matter, Alvarez argues that she has adduced direct evidence that her termination was motivated by her complaint of discrimination, and points to the "retaliatory attitude" purportedly reflected by Heidi and Edwin's deposition testimony in support. Nonetheless, the Court does not find that the statements proffered by Alvarez (*see* D.E. 69 at 17–18)—or any other statements in either the deposition testimony of Edwin or Heidi—indicate on their face, "without inference or presumption," that Alvarez was fired because she complained of being discriminated against. *See Schoenfeld*, 168 F.3d at 1266 (finding that statements, although suggestive of discrimination, were not the type of "blatant remarks" from which discrimination can be found without the aid of an inference, and did not therefore constitute direct evidence).

█ Thus, the Court turns to whether Alvarez has established a *prima facie* re-taliation claim under the *McDonnell–Douglas* framework. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993). To establish a *prima facie* case of retaliation under Title VII based on circumstantial evidence, Alvarez must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir.2000).

Here, Alvarez alleges that she was engaged in protected activity through "complaining that she and other Cuban–Americans were being subjected to discrimination on the count of ethnicity through the filing of an internal complaint the day before she was fired," and was retaliated against by being terminated from her employment with Defendant. (D.E. 1 ¶¶ 31–32.) Defendant does not contend that Alvarez's complaint to Edwin did not constitute protected activity, nor does Defendant argue that Alvarez did not suffer an adverse employment action; rather, Defendant argues that Alvarez's termination was not causally related to her complaint regarding the alleged discrimination.

█ To satisfy the "causal link" element, Alvarez must show that her complaint regarding discrimination on the basis of her national origin and her termination "were not wholly unrelated." *See Hairston*, 9 F.3d at 920 (citations omitted). Notably, this element is construed broadly, and can be satisfied where a plaintiff provides sufficient evidence that the employer knew of the protected expression and "that there was a close temporal proximity between this awareness and the adverse … action."

*Higdon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir.2004) (citations omitted). "A close temporal proximity between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a *prima facie* case." *Id.* (citations omitted). Here, it is undisputed that Defendant became aware of Alvarez's complaint regarding discrimination for the first time upon receiving Alvarez's October 3rd letter, and that, merely one day later, Alvarez was fired. Thus, the Court finds that Alvarez has satisfied the "causal link" element, and has thus established a *prima facie* claim of retaliation.

■ The Court's inquiry does not end there, however, as the burden merely shifts to Defendant to rebut the presumption of retaliation by producing legitimate reasons for terminating Alvarez. *See Johnson v. Booker T. Washington Broad. Serv.,* 234 F.3d 501, 507 n. 6 (11th Cir. 2000) (citations omitted). As with a Title VII discrimination claim, the employer's burden in this regard is "exceedingly light." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). Here, Defendant has met its light burden of sufficiently articulating legitimate reasons for terminating Alvarez after receiving the letter, namely, because (1) her work performance had been unsatisfactory and because Defendant had been seeking to replace Alvarez before she ever complained of being discriminated against; (2) the letter made it clear that Alvarez was not happy working for Defendant; (3) Heidi and Edwin felt that it would be awkward and counterproductive to continue Alvarez's employment; and (4) they were concerned that Alvarez might sabotage Defendant's operations. Defendant has supported these asserted reasons with unchallenged evidence that, *inter alia,* the first time Alvarez ever complained about discrimination to Defendant was in her October 3rd letter; Edwin and Heidi discussed Alvarez's poor job performance several weeks before receiving her October 3rd letter; about one week prior to Alvarez's termination (but before Alvarez complained of discrimination to Defendant), Darrach, who reported directly to Edwin, questioned Alvarez regarding monthly financial statements for a certain property, and Alvarez admitted she did not review the statements; and Heidi began searching for Alvarez's replacement, and in fact offered her position to someone else, weeks before Alvarez first complained of discrimination; further, Alvarez herself was aware that her position had been offered to Alex Sanchez. In light of the record of this case, the Court finds that Defendant's proffered reasons for terminating Alvarez are those that would motivate a reasonable employer, and that Defendant has thus satisfied its burden in this regard. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000).

■ Because Defendant has offered legitimate reasons for firing Alvarez, the presumption of retaliation disappears, and Alvarez must now show that each of Defendant's proffered reasons for terminating her were actually a pretext for prohibited retaliatory conduct. *Johnson,* 234 F.3d at 507 n. 6. To establish pretext in the context of a summary judgment motion, "a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037 (*quoting Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1336–37 (11th Cir.1999) (emphasis added)).

Significantly, Alvarez cannot simply "recast" each of Defendant's proffered reasons, but must meet each one "head on and rebut it." *Wilson v. B/E Aero., Inc.*, 376 F.3d 1079, 1088 (11th Cir.2004) (citations omitted). Merely "quarreling with [each] reason is not sufficient." *Id.*

Here, Alvarez has only challenged Defendant's explanation that Alvarez was terminated because of her poor work performance (*see* D.E. 69),[5] even though Defendant has provided three additional legitimate reasons for terminating her after she complained of discrimination. In light of Alvarez's failure to meet "head on" and rebut three of the four legitimate reasons articulated by Defendant, Defendant is entitled to summary judgment in its favor on Alvarez's retaliation claim. *See Chapman*, 229 F.3d at 1037 (holding that, in order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that *each* of the

employer's proffered reasons is pretextual and affirming summary judgment where plaintiff failed to rebut both reasons proffered by defendant).[6]

## C. State Law Discrimination and Retaliation Claims

▮▮▮ Finally, Alvarez claims that Defendant discriminated and retaliated against her in violation of the Florida Civil Rights Act ("FCRA"). Claims brought pursuant to Chapter 760 of the FCRA are analyzed under the same framework as Title VII claims, and thus, for the reasons discussed above, Defendant is entitled to summary judgment on Alvarez's state law discrimination and retaliation claims as well. *See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387(11th Cir.1998) (noting that FCRA is patterned after Title VII); *see also Albra v. Advan, Inc.*, 490 F.3d 826 (11th Cir.2007) ("The FCRA is modeled after Title VII, so that

---

**5.** Notably, Alvarez simply refers the Court back to her arguments made in support of her discrimination claim, but does not specifically challenge this reason in the context of her retaliation claim. (*See* D.E. 69.)

**6.** Even assuming Alvarez had not failed to address each of the legitimate reasons proffered by Defendant for terminating her after she complained of discrimination, the Court would still find that Alvarez failed to provide sufficient evidence to raise a genuine issue of material fact as to whether each of Defendant's reasons for terminating her after she complained of discrimination were pretextual. *See Cuddeback v. Florida Bd. of Educ.* 381 F.3d 1230, 1235 (11th Cir.2004). Even accepting all the evidence cited by Alvarez regarding her work performance as true and drawing all justifiable inferences in her favor, *see id.*, a reasonable jury could not conclude that Defendant fired Alvarez because she complained of discrimination, as the record contains undisputed facts which make it clear that Defendant had decided to terminate Alvarez before she ever complained of discrimination to Defendant. First, it is undisputed that

Alvarez's October 3rd letter was the first time Alvarez complained of discrimination to Defendant. It is also undisputed that Alvarez herself admitted in the letter that she had previously "found out" she was "going to be replaced"; obviously, then, Alvarez knew Defendant sought to replace her before Defendant was even aware of her discrimination complaint. (*See* D.E. 50–3 at 2.) In addition, Alvarez cannot legitimately dispute that, before Defendant was aware of Alvarez's discrimination complaint, Heidi began to search for her replacement, and in fact offered Alvarez's job to at least one other person, who in turn contacted Alvarez to inquire whether she knew that Defendant was looking for her replacement. Although Alvarez relies on the fact that she was fired one day after sending her October 3rd letter, this sole fact, when viewed in context of the unchallenged facts on the record as described above, is insufficient to create a genuine issue of material fact as to whether she was terminated because she complained of discrimination.

federal case law regarding Title VII is applicable to construe the Act") (*quoting Byrd v. BT Foods, Inc.*, 948 So.2d 921, 925 (Fla. 4th DCA 2007)). Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (D.E.42), filed on June 23, 2008, is **GRANTED**.

2. The Complaint (D.E.1) is dismissed **WITH PREJUDICE**.

3. This case is **CLOSED**.

4. All other pending motions not otherwise ruled upon are **DENIED as moot**.

**DONE AND ORDERED.**