ON MOTION FOR REHEARING
HAZOURI, J.
We grant Goheagan’s motion for rehearing, withdraw our original opinion, and substitute the following in its place.
Olive Goheagan, as Personal Representative of the Estate of Molly Swaby, Individually and as Assignee of John Perkins, appeals a final summary judgment entered in favor of American Vehicle Insurance Company (AVIC) on Goheagan’s claim of bad faith in failing to protect its insured Perkins from an excess judgment. We reverse.
Goheagan[1] filed a bad-faith claim against AVIC which arose as a result of a motor vehicle accident in which AVIC’s insured, Perkins, traveling at a high rate *435 of speed with a blood alcohol of .19, rear-ended decedent, Swaby. The collision occurred on February 24, 2007. At the time Perkins was insured under a policy issued by AVIC which provided for bodily injury liability coverage in the amount of $10,000/ $20,000. Swaby sustained catastrophic injuries and remained hospitalized in a coma until she died on May 12, 2007.
The wrongful death claim was not resolved and on January 20, 2009, a judgment was entered against Perkins in favor of Goheagan, as Personal Representative of the Estate of Swaby, in the amount of $2,792,893.65 with an additional cost judgment for $28,070 entered on February 9, 2009.
The underlying facts of the accident including Perkins’s liability and the catastrophic nature of injuries to Swaby are not in dispute. The gravamen of this appeal is whether there are material issues of fact to be resolved by a jury concerning whether AVIC acted in bad faith resulting in a judgment against Perkins in the amount of $2.8 million.
On February 26, 2007, two days after the accident, Perkins reported the accident to AVIC and the claim was assigned to Lee Ann Grieser. Greiser immediately notified Perkins that his policy limits for bodily injury claims were $10,000 per person, $20,000 per accident, and advised him that she would make every attempt to settle all claims for bodily injury in accordance with his policy limits. Within a few days of being assigned the claim, Grieser concluded that Perkins was the sole cause of the accident, Swaby’s injuries were far in excess of the policy limits, and the claim should be settled.
On February 28, 2007, Grieser called and spoke with Swaby’s stepfather who told her that Goheagan had retained an attorney and that Grieser would have to talk to Goheagan to obtain the name of the attorney. That same day Grieser called a different number for Goheagan and spoke to a person identified as a friend and was advised that Goheagan was not available. On March 1, 2007, Grieser again called Goheagan and left a voice mail message with her name and number. There was no further attempt by Grieser to contact Go-heagan until March 21, 2007, at which time Grieser spoke with Goheagan and asked for the name of her attorney. Goheagan advised Grieser to call back at a later time. Grieser again called Goheagan on March 27, 2007, and again sought the name of the attorney and was advised by Goheagan that she was not in a position to discuss matters at the time. On April 16, 2007, Grieser once again called Goheagan and again Goheagan advised Grieser that this was not a convenient time to speak about the matter. On April 19, 2007, Grieser learned that suit had been filed against Perkins; thereafter AVIC attempted to tender its policy limits which was not acceptable to Goheagan, which thereafter resulted in the aforementioned final judgment of $2.8 million.
An insurer’s duty toward its insured is best summarized by the Florida Supreme Court’s decision in Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla.1980):
An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured.... The insurer *436 must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.
Id. at 785 (citations omitted).
This duty of good faith has been reaffirmed in numerous cases decided since Boston Old Colony and as recently as the Florida Supreme Court’s decision in Berges v. Infinity Insurance Co., 896 So.2d 665 (Fla.2004).
In moving for summary judgment AVIC asserted that it acted fairly and honestly toward its insured with due regard for his interest but was prevented from entering into settlement negotiation or consummating a settlement for two reasons: (1) Swa-by was in a coma and there was no one to make the offer to; and (2) because AVIC had been made aware of the fact that there was a lawyer involved, Florida Administrative Code 69 and 69B-220.201[2] prohibited it from communicating or negotiating a settlement with Swaby or her mother, Goheagan. In opposition to the motion, Goheagan filed the affidavit and deposition of Mark Lemke, an expert witness on insurance claim handling. He gave his opinion that AVIC breached its duty of good faith by failing to proactively adjust the claim and timely tender the policy limits. “The claim should have immediately been recognized as one requiring tender of the $10,000 policy limits. Steps should have been taken to immediately tender the $10,000 policy limits to Molly Swaby. This did not happen.” He opined that AVIC failed to recognize the urgency of tendering the check and there were no ethical prohibitions that would have prevented Grieser from tendering a check. “Even after the lawsuit was filed the adjuster showed no sense of urgency in tendering a check.”
At the hearing on the motion for summary judgment, AVIC argued that the evidence of bad faith was insufficient as a matter of law. The trial court granted AVIC’s motion for summary judgment based upon AVIC’s first point that because Swaby was in a coma and no guardianship had been set up prior to her death, there was no one to whom to make an offer. At the hearing on the motion for summary judgment the following colloquy occurred between the court and Goheagan’s attorney Mr. Smith:
MR. SMITH: ... In this case, Your Honor, the insured was drunk at 8:00 in the morning on a Saturday morning, .19 blood alcohol. He’s going about 60 miles an hour on Military Trail and he rear ends a line of cars that are lawfully stopped for a red light.
*437 THE COURT: Mr. Smith, with all due respect, this has nothing to do with the underlying facts of the case. It has to do with the actions of the insurance company. Let’s stick to that.
MR. SMITH: Yes, Your Honor. And it’s our position, Your Honor, given those facts, which are undisputed, that there should have been an immediate tender of the policy limits.
THE COURT: To whom?
MR. SMITH: If I could — if you’ll bear with me, Judge, I will get to that.
On March 1st of '07, a few days after the accident, the insurance company had concluded this was a case to pay. They knew where the claimant was, and they knew she was in critical condition. Mr. Green [attorney for AVIC] pointed out to Your Honor that Ms. Goheagan is the mother of Ms. Swaby. I think the court needs to understand, I’m sure the court does understand, Ms. Swaby was in her 40s. Ms. Swaby was not a minor. Ms. Swaby was of age. The insurance company had no evidence that Ms. Goheag-an was empowered by. way of a guardianship or otherwise to act on her behalf at that point.
Their argument, Your Honor, is that the adjuster code of ethics bars them from action. There is no mention in the adjuster’s log that she felt constrained because of the adjuster code of ethics. That code is not mentioned anywhere. And it’s significant, Your Honor, that the property damage adjuster from the same insurance company that was operating out of the same log had direct communication with Ms. Goheagan to settle the property damage claim. Ms. Goheagan, the mother, owned the car that her daughter was driving at the time. A reasonable jury could conclude that this argument of adjuster code of ethics is something that occurred after the fact because another employee of the same insurance company dealt with the mother on the property damage claim. They had a direct communication to the mother.
I asked the adjuster, Your Honor, in her deposition if Molly Swaby had an attorney. She says in her deposition, I’m prohibited from dealing with her. At Page 77 she says I don’t believe Molly Swaby ever had one because she was unable to retain one because she was in a coma. It’s our position, Your Honor, and it is our expert’s opinion that the adjuster certainly wasn’t prohibited from disclosing the policy limits. That never happened. They never said we only have $10,000 in coverage. The adjuster was not prohibited from expressing a desire to pay. That never happened. The adjuster never said we have limited coverage and I want to pay. The adjuster never sent any letters at all to Mrs. Goheagan or Ms. Swaby that said anything. No letters were sent and the president of the company, when I deposed him, Judge, said yeah, she should have sent the letter. I think that in and of itself creates an issue of fact. There was no prohibition and our expert has testified that she could have tendered a check made payable to Molly Swaby and her attorney, identity unknown or somehow qualified the check so it couldn’t be negotiated and forwarded the cheek.
[[Image here]]
Your Honor, I’ve given the court the affidavit of Mark Lemke who’s been in the insurance business for over 30 years. It is not conclusory. He explains why American Vehicle did not adjust this claim properly. He explains that they should have immediately tendered the policy limits, and this did not happen. He explains why there were not prohibí- *438 tions under the adjuster code of ethics that would have prevented a tender, that a tender should have occurred as an urgent matter, that the supervision of the claim fell below industry standards, that communications with the insured fell below industry standards and the insured was not adequately advised of the exposure and his liability for the exposure. They could have tendered the check.
THE COURT: With all due respect, Mr. Smith, you still didn’t answer my question. To whom would they have tendered?
MR. SMITH: They could have tendered the check to Molly Swaby, Your Honor.
' THE COURT: In a coma who never recovered?
MR. SMITH: There’s a difference between tendering the check and her ability to cash the check.
THE COURT: The law doesn’t require a futile act, Mr. Smith. If they knew she was in a coma why would they tender the check to her?
MR. SMITH: They could have tendered the check, Your Honor, to Olive Goheagan.
THE COURT: Who was not authorized to accept by your own admission.
“The standard of review of a summary judgment is de novo. In reviewing a summary judgment, [the court] must consider all record evidence in a light most favorable to the non-moving party. If material facts are at issue and the slightest doubt exists, summary judgment must be reversed.” Mills v. State Farm Mut. Auto. Ins. Co., 27 So.3d 95, 96 (Fla. 1st DCA 2009) (citations omitted).
“In Florida, the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the ‘totality of the circumstances’ standard.” Berges, 896 So.2d at 680 (Fla.2004) (citing State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63 (Fla.1995)). “Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause.” Powell v. Prudential Prop. & Cas. Ins. Co., 584 So.2d 12, 14 (Fla. 3d DCA 1991).
Goheagan argues that there remained genuine issues of material fact which precluded summary judgment. She argues that the issue of whether an insurer acted in bad faith is decided by reviewing the steps taken by the insurer to offer to settle or tender, not the actions of the claimant. She asserts there is a dispute as to whether Goheagan’s retention of an attorney was an impediment to communication of a settlement offer and whether the fact that Swaby was in a coma prevented any possible settlement so there was no point in making the offer or tender. We agree.
“Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations.” Powell, 584 So.2d at 14; see also Farmers Ins. Exch. v. Schropp, 222 Kan. 612, 567 P.2d 1359 (1977) (duty to initiate settlement negotiations arises if carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured); Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 323 A.2d 495 (1974) (where substantial injuries and potential liability of insured are obvious, failure to offer policy limits constitutes bad faith even where there is no assurance that action can be settled); Alt v. Amer. Family Mut. Ins. Co., 71 Wis.2d 340, 237 N.W.2d 706 (1976) (insurer has affirmative duty to in *439 vestigate possibilities of settlement); Eastham v. Oregon Auto. Ins. Co., 273 Or. 600, 540 P.2d 364 (1975) (insurer may be found to have acted in bad faith for delaying an offer to settle). See generally 14 Couch on Insurance 2d § 51:17 (Rev. ed.1982); J. Appleman, Insurance Law and Practice § 4711, at 383 (Rev. ed.1979).
Clearly the trial court erred in granting summary judgment based on its assumption there could be no bad faith because Swaby was in a coma and therefore there was no one to whom to make an offer. See Berges, 896 So.2d at 675 (a guardian or personal representative who has not yet been appointed can negotiate a settlement on behalf of a claimant). Furthermore we can find no case law support for AVIC’s argument that it could not have at least made a written offer and/or tender to Swa-by through her mother. It is unclear at what point an attorney had been retained. If in fact Goheagan had retained an attorney, the assistance of the attorney may have been necessary to finalize a settlement but would not have precluded an offer. With the catastrophic injuries, clear liability, and the limited available liability limits of $10,000, a jury could decide that there was not much to negotiate; and the representation by an attorney would not have been an impediment to at least make an offer to settle.
AVIC cites to several federal district court cases outlining factual circumstances which warranted the granting of a summary judgment in bad faith cases. However, as this court noted in Byrd v. BT Foods Inc., 948 So.2d 921 (Fla. 4th DCA 2007), “federal eases [which] permit summary judgment based on Federal Rule of Civil Procedure 56 ... are of limited prec-edential value in Florida summary judgment cases [] [because] Florida places a higher burden on a party moving for summary judgment in state court, requiring the movant to: ‘[S]how conclusively that no material issues remain for trial.” Id. at 923-24 (citation omitted). We also noted in Byrd that “[w]hen reviewing a ruling on summary judgment, an appellate court must examine the record and any supporting affidavits in the light most favorable to the non-moving party.” Id. at 923. ‘Where credibility issues impact the determination of material facts, summary judgment is not appropriate.” Id.
The financial exposure to Perkins was a ticking financial time bomb. Suit could be filed at any time. Any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith. See Boston Old Colony, 386 So.2d at 785 (“With due regard for the interests of the insured is for the jury.”); see also Campbell v. Gov’t Emps. Ins. Co., 306 So.2d 525, 530-31 (Fla.1974) (“[R]easonable diligence and ordinary care [are] material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact — not of law.”).
We do not hold as a matter of law that AVIC was guilty of bad faith. It may be that, based upon the facts of this case, the jury might conclude that AVIC acted reasonably and prudently in attempting to protect Perkins. However, there are disputed issues of fact and issues of credibility that must be resolved and that cannot be done by way of a summary judgment. We therefore reverse and remand for further proceedings consistent with this opinion.

Reversed and Remanded for Further Proceedings.

POLEN, J., concurs.
LEVINE, J., dissents with opinion.

. Goheagan is the mother of Molly Swaby, and a survivor under the wrongful death act. §§ 768.16-768.26, Fla. Stat. (2007).

. (i) An adjuster shall not negotiate or effect settlement directly or indirectly with any third-party claimant represented by an attorney, if the adjuster has knowledge of such representation, except with the consent of the attorney. For purposes of this subsection the term "third-party claimant” does not include the insured or the insured's resident relatives.
[[Image here]]
(I) An adjuster shall not attempt to negotiate with or obtain any statement from a claimant or witness at a time that the claimant or witness is, or would reasonably be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss. The adjuster shall not conclude a settlement when the settlement would be disadvantageous to, or to the detriment of, a claimant who is in the traumatic or distressed state described above.